# INTERN'L MARINE INS. CO. v. THOS. WINSMORE.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued January 16, 1889—Decided January 28, 1889.

1. As a general rule, whatever furnishes to the assured a reasonable expectation of pecuniary benefit from the continued existence of the subject-matter of insurance, is a valid insurable interest therein, and the right of property is not always an essential ingredient.

Statement of Facts.

2. The owners of a vessel and its cargo engaged in a joint venture are in the relation of partners in the venture, each having a lien on the vessel and cargo for his own interest in the copartnership, as well as for advancements and disbursements made by him for the common benefit.

3. Wherefore, such a part owner has an insurable interest in the joint venture, validating an insurance on the same, to the extent of his advancements and disbursements made on liabilities incurred before the vessel is destroyed, and for which it would have been liable had the loss not occurred.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

No. 50 July Term 1888, Sup. Ct.; court below, No. 361 December Term 1887, C. P. No. 2.

On January 23, 1888, Thomas Winsmore brought assumpsit against the International Marine Insurance Company, Limited, and the same day filed a statement from which the following facts appeared as the ground of action:

The Schooner, Francis L. Cooper, of which Thomas Winsmore, the plaintiff, was part owner to the extent of an eighth interest, was an American vessel hailing from Philadelphia, and on March 27, 1887, set out from her home port with a cargo of general merchandise purchased on the joint account of the owners and bound for San Andreas, Old Providence and other islands in the Caribbean sea, where the cargo was to be sold for cash and cocoanuts, a cargo of cocoanuts to be carried on her return voyage to Philadelphia, there to be sold, also for joint account of the owners. At the date of the schooner's departure, the plaintiff, at the request of the other owners, had advanced for store and chandlery bills the sum of $1,600.39, and between that date and June 1, 1887, he had made further advances on account of wages and insurance on cargo, amounting to $250.50.

On June 25, 1887, while the schooner was at sea, the defendant company signed and delivered to the plaintiff a contract of insurance, of which the following was the material part:

" This is to certify that we have insured for Thomas Winsmore, subject to the conditions of special cargo policy, now in use by the insurers, the sum of one thousand dollars, on advances and disbursements, valued at sum insured, by the

schooner Francis L. Cooper, at and from San Andreas and Old Providence to Philadelphia. Loss, if any, payable at the office of the company in Philadelphia, to the order of Thomas Winsmore on presentation of this certificate, and said loss to be adjusted with the holder hereof, in conformity with the conditions of the said policy."

The schooner reached Aspinwall on June 28, 1887, and on June 30th sailed for San Andreas, where she arrived on July 3d. A cargo of cocoanuts was procured and placed on board, but before sailing from San Andreas she was destroyed by fire with her entire cargo, on August 10th. On September 5th and 8th, 1887, the plaintiff paid for wages of the crew and master from March 23d, the sum of $1,397.74.

The foregoing facts were undisputed by the affidavit of defence, filed on February 6, 1888, but recovery by the plaintiff was resisted upon grounds sufficiently appearing in the opinion of this court.

On April 9, 1888, the court, HARE, P. J., made absolute a rule for judgment for want of a sufficient affidavit of defence ; exception. The damages were then assessed in favor of the plaintiff at $1,030, and judgment entered, when the defendant company took this writ, assigning as error the order making absolute the rule for judgment.

*Mr. Alfred Driver* (with him *Mr. J. Warren Coulston*), for the plaintiff in error :

1. A lien for advances for store and chandlery bills for a domestic vessel in her home port, is given by § 2, act of June 13, 1836, P. L. 616, which continues till the time when the vessel shall proceed on her next voyage and no longer. Supplies, etc., furnished to a vessel at her home port do not create a lien against the vessel under the general maritime law : The General Smith, 4 Wheat. 438 ; The Lottawanna, 21 Wall. 558 ; Insurance Co. v. Baring, 20 Wall. 159, 163. Being without a lien upon the vessel, the plaintiff was without an insurable interest, and his demand for such advances falls : Insurance Co. v. Baring, 20 Wall. 159, 163 ; 1 Phillips on Insurance, § 204 ; The Lottawanna, 21 Wall. 559. The same principle will apply to the other items of plaintiff's claim advanced before the certificate of insurance was made.

2. The defendant insured advancements and disbursements made and to be made, "at and from San Andreas and Old Providence to Philadelphia." It is not shown what proportion of the wages of crew and master became due after July 3, 1887, when the insurance attached. Moreover, the schooner was destroyed August 10, 1887, and these wages were paid up to September 5th. And in addition, it is well settled by the American law that the master has no lien upon the vessel for his wages: The Orleans v. The Phœbus, 11 Pet. 175; The Imogene McTerry, 19 Fed. R. 463; Fisher v. Willing, 8 S. & R. 118. The maritime lien for the wages of seamen is a personal one, and cannot be assigned so as to be enforceable as a lien by the assignee: Henry's Admiralty, 133.

*Mr. Henry R. Edmunds* (with him *Mr. James M. West*), for the defendant in error:

1. While the owners were tenants in common of the vessel, yet as to this particular venture they were partners, and the part owner making advancements and disbursements on account thereof has a lien in rem therefor against the vessel, cargo and earnings: Story on Partnership, 56, 97, 441, 444; Abbott on Shipping, 77, 79, 94; De Colyar on Partnership, 794; 1 Parsons, Mar. Law, 95, 101; Holderness v. Shackels, 3 B. & C. 612, 618; Doddington v. Hallet, 1 Ves. Sr. 497.

2. Right of property is not essential to an insurable interest; injury from its destruction, or benefit from its preservation, may be sufficient: whatever furnishes a reasonable expectation of pecuniary benefit from the continued existence of the subject of insurance, is usually a valid insurable interest: Hancox v. Insurance Co., 3 Sumn. 142; Bucks v. Hedrick, 1 Pet. 163; Miltenberger v. Beacom, 9 Pa. 198; Marshall on Insurance, 105; Dixon, General Average, 144; Baring v. Insurance Co., 20 Wall. 163; Pedrick v. Fisher, 1 Sprague 565; Patapsco Ins. Co. v. Coulter, 3 Pet. 222; Fenn v. Insurance Co., 53 Ga. 378; Putnam v. Insurance Co., 5 Met. 386; Lucena v. Robinson, 2 Bos. & P. 75.

3. The insured is under no obligation to disclose everything to the underwriters; silence is no imputation of bad faith: Grevemeyer v. Insurance Co., 62 Pa. 340. A consignee who has made advances on the faith of the consignment may insure

them in his own name: Parks v. Insurance Co., 5 Pick. 34;
Van Nutter v. Insurance Co., 2 Sandf. 490; and the value of
plaintiff's interest is not material: Strong v. Insurance Co., 10
Pick. 40; Carruthers v. Sheddon, 6 Taunt. 13.

OPINION, MR. JUSTICE STERRETT:

In view of the undisputed facts disclosed by the statement
of claim and affidavit of defence, there appears to have been no
error in entering the judgment complained of.

In March, 1887, plaintiff below and other owners of the
schooner Francis L. Cooper were engaged in the joint venture
referred to in the affidavit of defence. The vessel, with a
cargo of general merchandise belonging to the owners, then
left the port of Philadelphia, bound for Old Providence, San
Andreas, and other islands in the Caribbean sea. In accord-
ance with their original purpose, the outward cargo was there
disposed of for cash and in exchange for other merchandise,
which was intended to have been brought to Philadelphia, by
the vessel on her return trip, and there sold for joint account
of her owners. On August 10th of the same year the vessel,
laden with cargo thus procured for the homebound voyage,
while lying at the harbor of San Andreas, was totally destroyed
by fire.

With the view of promoting the joint venture, the plaintiff
below, at the request of the other owners of vessel and cargo,
made the advancements and disbursements necessary to pro-
vide the vessel with crew, means of subsistence, etc., for the
out- as well as the in-bound voyage. In June, 1887, while the
vessel was at sea, the contract of insurance in suit was effected
for the purpose of indemnifying himself in case the vessel and
cargo were lost and the means of reimbursing him were thus
wanting. It is not denied that the advancements and disburse-
ments were made, as alleged, nor is it denied that the charges
therefor, aggregating $3,250.63, are reasonable and proper.

It is scarcely necessary to cite authorities to show that, upon
such a state of facts, plaintiff below had an insurable interest,
at least to the extent of his advancements and disbursements.
While it may be difficult to give a comprehensive and at the
same time accurate definition of an insurable interest, it is
doubtless well settled that not only any qualified property in

the thing insured, but also any reasonable expectation of legitimate profit or advantage, to spring therefrom, is a proper subject of insurance. Right of property is not always an essential ingredient of an insurable interest. Loss or injury from its destruction, or benefit from its preservation, may be sufficient. As a general rule, whatever furnishes a reasonable expectation of pecuniary benefit from the continued existence of the subject of insurance is a valid insurable interest: Miltenberger v. Beacom, 9 Pa. 199.

The advancements and disbursements, referred to in the contract of insurance, embrace not only money advanced by plaintiff below, at the request of the other owners, for the particular voyage and venture, but all disbursements, on account thereof, made in pursuance of liabilities incurred before the vessel was destroyed, and for which it would have been liable in case the loss had not occurred. The phrase "at and from San Andreas and Old Providence to Philadelphia," designates the part of the voyage to which the risk insured against was intended to apply, and not the time within or during which the advancements and disbursements were to be made.

As owners of the schooner, the parties were of course tenants in common of the vessel; but, as to their joint venture, their relation was that of partners, each of whom has a lien on the partnership property not only for liabilities to third parties, but also for his own interest in the copartnership, as well as for moneys advanced by him for the use thereof. Hence, part owners of a vessel who purchase a cargo and engage in a venture, involving the transportation, sale, and exchange of the cargo, etc., for their joint account, have a like lien for advancements and disbursements made by each respectively for the common benefit: Story on Part., §§ 56, 97, 441, 444. In the section last cited, the learned author says: "In short, cases of this sort are treated as constituting a quasi partnership with reference to the intended voyage or adventure upon which the ship is to be employed; and therefore the repairs, outfits and other expenses incurred to accomplish the enterprise are deemed to be made on joint account, and intended to be governed, as to rights and liens, by the rules of strict partnerships. . . . . It is but a reasonable presumption, in the absence of all controlling circumstances, that part owners do not intend

to rely solely upon the personal responsibility of each other, to reimburse themselves for expenses and charges incurred upon the common property for the common benefit; but, that there is a mutual understanding that they shall possess a lien in rem." That presumption is not in any degree weakened, but rather strengthened, in the case at bar, by the fact that the advancements and disbursements were made at the request of the other owners.

It is unnecessary to notice other grounds of defence suggested by plaintiff in error. There is nothing in either of them that would have warranted the court in refusing judgment for want of a sufficient affidavit of defence. An application of the principles above noticed to the undisputed facts of the case entitled plaintiff below to judgment.

Judgment affirmed.